**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| Conservation Law Foundation, Inc., | ) |
|  | ) |
|  | ) C.A. No. 1:19-cv-120 |
| Plaintiff, | ) |
|  | ) **COMPLAINT FOR** |
|  | ) **DECLARATORY AND INJUNCTIVE** |
| v. | ) **RELIEF AND CIVIL PENALTIES** |
|  | ) |
|  | ) |
| Material Concrete Corp., Materials | ) |
| Equipment Corp., and Material | ) |
| Realty, LLC, | ) |
|  | ) (Federal Water Pollution Control Act, |
| Defendants. | ) 33 U.S.C. §§ 1251 to 1387) |
|  | ) |

## I. INTRODUCTION

1. This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1387 (the "Clean Water Act," "the Act," or the "CWA").

2. Plaintiff Conservation Law Foundation, Inc. ("Plaintiff" or "CLF") seeks declaratory judgment, injunctive relief, and other relief the Court deems proper to remedy Defendants Material Concrete Corp., Materials Equipment Corp., and Material Realty, LLC's ("Defendants" or "Material") violations of the Clean Water Act, which include past and ongoing unauthorized discharges of polluted stormwater and process waste water associated with industrial activities at their sand and gravel and concrete facility in North Smithfield, Rhode Island into waters of the United States, and failure to comply with the Rhode Island Pollutant Discharge Elimination System ("RIPDES") Multi-Sector

1

General Permit for Stormwater Discharges Associated With Industrial Activity ("MSGP"), and the individual RIPDES permit that is required for discharges of process wastewater.

3.      Section 301(a) of the Clean Water Act makes "the discharge of any pollutant by any person […] unlawful" except when in conformance with enumerated statutory provisions, including the requirement that a discharge obtain and comply with a National Pollutant Discharge Elimination System ("NPDES") permit under § 402 of the Act. *See* 33 U.S.C. §§ 1311(a), 1342.

4.      Under delegated authority, Rhode Island issues individual and general permits under the RIPDES program, which are required in order to discharge stormwater from industrial activities in Rhode Island.

5.      When stormwater or snowmelt comes into contact with activities at industrial facilities, the runoff picks up pollutants and transports them to nearby storm sewer systems or to rivers, lakes, or coastal waters.

6.      The Rhode Island Department of Environmental Management ("RIDEM") issues the RIPDES MSGP.

7.      The MSGP covers 29 categories of industrial activity.

8.      Defendants engage in significant industrial activities at their sand and gravel and concrete facility located at 618 Greenville Road, North Smithfield, Rhode Island 02896 (hereinafter the "Facility"), including mining, storing, moving, and processing sand, gravel, and other earth materials outdoors or in a manner otherwise exposed to the elements; operating and storing heavy machinery and equipment outdoors; and driving vehicles on and off of the Facility.

2

9. Defendants use water which, during manufacturing or processing, comes into direct contact with or results from the production or use of raw material, intermediate product, finished product, byproduct, or waste product.

10. Defendants' industrial activities fall within enumerated categories of industrial activity subject to the MSGP.

11. Defendants' industrial activities generate stormwater pollution that is collected, channeled, and conveyed into waters of the United States, including the Woonasquatucket River (Waterbody IDs RI0002007R-10A, RI0002007R-10B, and RI0002007R-10C), which flows into the Providence River (Waterbody IDs RI0007020E-01A and RI0007020E-01B), which drains into Narragansett Bay.

12. Defendants' ongoing discharges of stormwater associated with industrial activity are not authorized by an individual RIPDES permit or the MSGP.

13. Defendants' past and on-going discharges of process wastewater are not authorized by an individual RIPDES permit.

14. Defendants have operated, and continue to operate, their sand and gravel facility in violation of the Clean Water Act.

## II. JURISDICTION AND VENUE

15. Plaintiff brings this civil suit under the citizen suit enforcement provisions of § 505 of the Clean Water Act, 33 U.S.C. § 1365.

16. This Court has subject matter jurisdiction over the parties and this action pursuant to § 505(a)(1) of the Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

17.     Plaintiff has complied with the statutory notice requirements under CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1) and the corresponding regulations at 40 C.F.R. § 135.2.

18.     On December 19, 2017, Plaintiff provided Material with notice of its intention to file suit for violations of the Clean Water Act and the MSGP by sending a sixty-day notice letter ("Notice Letter") via certified mail to Robert A. Pezza, the president of Material Concrete Corp. and president and registered agent of Materials Equipment Corp., Constance M. Pezza, the registered agent of Material Concrete Corp., and Thomas C. Plunkett, the registered agent of Material Realty, LLC, regarding Defendants' violations of the CWA and the MSGP. 33 U.S.C. § 1365(a)(1); 40 C.F.R. § 135.2(a)(1).

19.     A copy of the Notice Letter was sent to the Administrator of the EPA, the Administrator of EPA Region I, and the Director of RIDEM pursuant to 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1).

20.     A true and accurate copy of Plaintiff's Notice Letter is appended as Exhibit A to this Complaint and is incorporated here by reference.

21.     More than sixty days have elapsed since Plaintiff served the Notice Letter on Defendants, during which time neither the EPA nor the State of Rhode Island has commenced a court action to redress the violations alleged in this complaint. 33 U.S.C. § 1365(b)(1)(B).

22.      Venue is proper in the U.S. District Court for the District of Rhode Island pursuant to § 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

### III. PARTIES

23.   Plaintiff CLF is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment.

24.   CLF is incorporated under the laws of Massachusetts with an office at 235 Promenade Street, Providence, Rhode Island 02908, and a principal place of business at 62 Summer Street, Boston, Massachusetts 02110.

25.   CLF has over 5,000 members, including more than 300 members in Rhode Island.

26.   CLF has long worked to protect the health of New England's waterways, including addressing the significant water quality impacts of stormwater pollution.

27.   CLF members use and enjoy New England's waterways for recreational and aesthetic purposes, including boating, swimming, fishing, hunting, and sightseeing, including but not limited to waters of the United States affected by Defendants' unpermitted discharges of pollutants.

28.   CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, initiates enforcement actions on behalf of itself and its members.

29.   Defendants' unauthorized discharges of pollutants into the Woonasquatucket River and downstream receiving waters adversely affect CLF members' use and enjoyment of those water resources.

30.   The interests of CLF's members have been, are being, and will continue to be adversely affected by Defendants' failure to comply with the Clean Water Act and the NPDES.

31. The relief sought in this action will redress the harms to CLF members' use and enjoyment of the Woonasquatucket River and downstream receiving waters.

32. The unlawful acts and omissions described herein have and will continue to irreparably harm Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

33. Defendant Material Concrete Corp. is a corporation in good standing, organized under the laws of Rhode Island, and with a principal place of business at 618 Greenville Road, North Smithfield, Rhode Island.

34. Robert A. Pezza is the current president, secretary, vice president, and registered agent of Material Concrete Corp.

35. Defendant Materials Equipment Corp. is a corporation in good standing, organized under the laws of Rhode Island, and with a principal place of business at 618 Greenville Road, North Smithfield, Rhode Island.

36. Robert A. Pezza is the current president, secretary, treasurer, and registered agent of Materials Equipment Corp.

37. Defendant Material Realty, LLC is a corporation in good standing, organized under the laws of Rhode Island, and with a principal place of business at 618 Greenville Road, North Smithfield, Rhode Island.

38. Thomas C. Plunkett is the registered agent of Material Realty, LLC.

39. Defendants operate a sand and gravel and concrete facility located at 618 Greenville Road, North Smithfield, Rhode Island 02896.

40. Defendants maintain, operate, and are responsible for industrial activities at the Facility.

41.     An aerial image of the Facility showing its proximity to the Woonasquatucket River is attached as Exhibit B.

### IV. STATUTORY AND REGULATORY BACKGROUND

42.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States from a "point source," unless the discharge complies with various enumerated sections of the Act.

43.     Among other things, § 301(a) prohibits discharges not authorized by, or in violation of the terms of, a valid permit issued pursuant to § 402(p) of the Act, 33 U.S.C. § 1342(p).

44.     "Point source" is defined broadly under § 502(14) of the Act to include "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." CWA § 502(14), 33 U.S.C. § 1362(14).

45.     Congress amended the Clean Water Act in 1987 to require that certain industrial facilities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No. 100-4, § 405, 101 Stat 7 (1987); *see* 55 Fed. Reg. 47990, 47991-93 (Nov. 16, 1990).

46.     Section 402 of the Act requires that NPDES permits be issued for stormwater discharges associated with industrial activities. CWA §§ 402(a)(1), 402(p)(2), 402(p)(3)(A), 402(p)(4), 402(p)(6); 33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A), 1342(p)(4), 1342(p)(6).

7

47.     EPA regulations set forth at 40 C.F.R. § 122.26 required industrial dischargers to submit applications for permit coverage no later than October 1, 1992. 73 Fed. Reg. 56572.

48.     In establishing these regulations, EPA cited abundant data showing the harmful effects of stormwater runoff on rivers, streams, and coastal areas across the nation.

49.     EPA found that runoff from industrial facilities contained elevated pollution levels. 55 Fed. Reg. 47990, 47991 (Nov. 16. 1990).

50.     EPA has delegated authority to the State of Rhode Island to implement a NPDES permitting program under the Clean Water Act.

51.     RIDEM has issued an MSGP under RIPDES.

52.     In October 2005, RIDEM issued an MSGP with an effective date of May 1, 2006, requiring all covered facilities to file a Notice of Intent ("NOI") for coverage under the MSGP.

53.     RIDEM subsequently issued an MSGP with an effective date of August 15, 2013, (the "2013 MSGP") requiring all covered facilities to file an NOI.

54.     The 2013 MSGP remains in force, and is available at http://www.dem.ri.gov/programs/benviron/water/permits/ripdes/pdfs/msgp.pdf.

55.     In order to discharge stormwater lawfully, industrial dischargers in Rhode Island must obtain coverage under the 2013 MSGP and comply with its terms. 2013 MSGP Part I(B)(1)(a); 33 U.S.C. § 1342(p).

56.     Industrial dischargers must also develop and implement a Storm Water Management Plan ("SWMP"). *See* 2013 MSGP Part V.

57.    The SWMP must include, but is not limited to, the following: information related to a company stormwater pollution prevention team; a site description and general location map; a summary of pollutant sources; a description of control measures; and schedules and procedures pertaining to control measures and monitoring. *See* 2013 MSGP Part V(F).

58.    To discharge under the MSGP, the Facility must select, design, install, and implement control measures (including best management practices) to prevent polluted stormwater discharges from reaching nearby waterbodies. *See* 2013 MSGP Part II(A).

59.    Section 505(a)(1) the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

60.    Enforcement action under Clean Water Act § 505(a) includes an action seeking remedies for unauthorized discharge under CWA § 301, 33 U.S.C. § 1311, as well as for violation of a permit condition under CWA § 402, 33 U.S.C. § 1342, and § 505(f) of the Act, 33 U.S.C. § 1365(f).

61.    Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per day per violation for all CWA violations occurring between January 12, 2009 and November 2, 2015; up to $51,570 per day per violation for all CWA violations occurring after November 2, 2015 and assessed on or after August 1, 2016 but before January 15, 2017; up to $52,414 per day per violation for all CWA violations occurring after November 2, 2015 and assessed on or after January 15, 2017; and up to $53,484 per day per violation for all CWA violations occurring after November

9

2, 2015 and assessed on or after January 15, 2018, pursuant to §§ 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4.

### V. FACTS

62.    Defendants have operated their Facility in North Smithfield since at least December 19, 2012.

63.    Defendants' Facility consists of sand and gravel pits, and sand and gravel and concrete production and processing areas.

64.    Defendants' industrial operations at the Facility include, but are not limited to, the operation of crushers, conveyance systems, and various screening and washing decks.

65.    The primary activities at the Facility, construction sand and gravel (Standard Industrial Classification Code 1442) and concrete (Standard Industrial Classification Codes 3271-3275), are among the sectors of industrial activity covered by the MSGP (*see* 2013 MSGP Appendix B, Sector J), and/or the activities listed in 40 C.F.R. § 122.26(b)(14).

66.    Defendants have engaged and continue to engage in the following industrial operations at the Facility: storing, moving, and processing sand, gravel, cement, fly ash, and other materials outside or otherwise exposing them to the elements; operating and storing heavy machinery and equipment outdoors; and driving vehicles on and off the Facility thereby tracking pollutants off-site.

67.    Defendants' processing of their sand, gravel, and rock products includes washing those products with water.

68.    The earth material piles and areas of industrial activity at the Facility are uncovered and therefore exposed to precipitation.

69.     The earth material piles also are subject to being sprayed down with water during certain conditions.

70.     The sources of pollutants associated with the industrial activities at the Facility include, but are not limited to: sand, gravel, cement, fly ash, rock and other earth materials; machinery and equipment; vehicles; shipping and receiving areas; loading and unloading areas; maintenance areas; and onsite re-fueling of machinery.

71.     Pollutants present in stormwater discharged from the Facility include, but are not limited to: dust, total suspended solids, total dissolved solids, diesel/gas fuel, oil, heavy metals, trash, and other pollutants associated with the Facility's operations.

72.     EPA considers precipitation above 0.1 inches during a 24-hour period a measurable precipitation event. 40 C.F.R. § 122.26(c)(i)(E)(6).

73.     The 2013 MSGP specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures.

74.     During every measurable precipitation event and every instance of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facility, generating stormwater runoff associated with the Facility's industrial activity.

75.     Stormwater runoff from the Facility has been and continues to be conveyed by the operation of gravity *via* site grading, surface water channels, subsurface hydrological connections, and other conveyances to the Woonasquatucket River, and to downstream receiving waters, including the Providence River.

76.     Runoff from the Facility carries pollutants from several sources, including but not limited to: sand and gravel piles that are open to the elements; machines and equipment left outdoors; and vehicles driven on and off the Facility.

77.     The Woonasquatucket River (Waterbody IDs RI0002007R-10A, RI0002007R-10B, and RI0002007R-10C) is a Category 5 Waterbody, indicating that it is impaired for one or more uses and requires a Total Maximum Daily Load ("TMDL").

78.     Under the Rhode Island Water Quality Regulations, 250 R.I. Code R. §§ 150-05-1.1 to -1.29, the Woonasquatucket River has been classified as a Class B and B1 fresh water stream "designated for fish and wildlife habitat and primary and secondary contact recreational activities" which "shall have good aesthetic value." 250 R.I. Code R. §§ 150-05-1.9(B)(3) to (4).

79.     RIDEM has designated the Woonasquatucket River as impaired pursuant to § 303(d) of the Act for failure to meet minimum water quality standards.

80.     The Woonasquatucket River is impaired for zinc, mercury in the water column, dioxin, non-native aquatic plants, dissolved oxygen, PCB in fish tissue, mercury in fish tissue, *Enterococcus* bacteria, and Fecal Coliform.

81.     The Providence River (Waterbody IDs RI0007020E-01A and RI0007020E-01B) is a Category 5 Waterbody, indicating that it is impaired for one or more uses and requires a TMDL.

82.     Under the Rhode Island Water Quality Regulations, the Providence River has been classified as Class SB and SB1 seawater "designated for primary and secondary contact recreational activities; shellfish harvesting for controlled relay and depuration; and fish and wildlife habitat." 250 R.I. Code R. §§ 150-05-1.9(C)(2) to (3).

83.     RIDEM has designated the Providence River as impaired pursuant to § 303(d) of the Act for failure to meet minimum water quality standards.

84.     The Providence River is impaired for total nitrogen, dissolved oxygen, and Fecal Coliform.

85.     Defendants discharge directly into the Woonasquatucket River, which runs directly through the Facility.

86.     The Woonasquatucket River meets the Moshassuck River in Providence, Rhode Island, and the two combine to form the Providence River, which flows into Narragansett Bay.

87.     The Woonasquatucket River, the Moshassuck River, and the Providence River are all "waters of the United States," as defined in 40 C.F.R. § 122.2, and therefore, "navigable waters," as defined in 33 U.S.C. § 1362(7).

88.     Stormwater runoff from the Facility is not treated to remove the dust, total suspended solids, total dissolved solids, diesel/gas fuel, oil, heavy metals, trash, and other pollutants associated with the Facility's operations before it is discharged into the Woonasquatucket River.

89.     Defendants have failed to obtain coverage under the 2013 MSGP.

90.     Defendants have not met and continue to fail to meet the requirements to obtain authorization to discharge stormwater under the 2013 MSGP or any other valid authorization for the Facility.

91.     Defendants have failed to install and implement control measures to meet numeric and non-numeric effluent limitations in 2013 MSGP Part II(A)(3) at the Facility.

92.     Defendants have failed to develop and implement a complete and accurate SWMP that meets the requirements of 2013 MSGP Part V, before submitting an NOI to obtain permit coverage for the Facility.

93.    Defendants are not authorized to discharge from the Facility under the 2013 MSGP because they have not met all requirements of 2013 MSGP Part 1(C).

94.    Defendants' Facility uses water in its industrial processes, including but not limited to washing gravel and crushed stone and spraying rock crushing and sorting machinery.

95.    Under some conditions, process wastewater at the Facility is and has been discharged into the Woonasquatucket River.

96.    Defendants do not hold a valid individual RIPDES permit authorizing them to discharge process wastewater.

## VI. CLAIMS FOR RELIEF

### First Cause of Action:
### Unauthorized Discharge of Pollutants Into Waters of the United States

97.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

98.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any "point source" to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to § 402(p) of the CWA, 33 U.S.C. § 1342(p).

99.    In order to be authorized to discharge lawfully under the 2013 MSGP, an industrial discharger's facility must meet requirements set forth in 2013 MSGP Part I. These requirements include:

(a) establishing eligibility for coverage under the permit;

(b) selecting, designing, installing, and implementing control measures in accordance with 2013 MSGP Part II(A);

14

(c) developing a complete and accurate SWMP in accordance with the permit's requirements; and

(d) filing a complete and accurate NOI to seek coverage under the permit.

100. Defendants are required to obtain permit coverage for their Facility and comply with the MSGP pursuant to § 402 of the Clean Water Act, 33 U.S.C. § 1342.

101. Defendants' industrial activities at the Facility have resulted and continue to result in "stormwater discharge associated with an industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) into the Woonasquatucket River and downstream receiving waters on every day of rainfall greater than 0.1 inches and every instance of snowmelt.

102. Defendants' discharges of stormwater associated with industrial activity ("industrial stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).

103. Defendants' industrial stormwater discharges at the Facility are "point source" discharges into waters of the United States in violation of Clean Water Act § 301(a), 33 U.S.C. § 1311(a).

104. Industrial stormwater discharges at the Facility have caused and continue to cause discharges of pollutants to waters of the United States in violation of § 301(a) of the CWA, 33 U.S.C. § 1311(a).

105. Since at least December 19, 2012, Defendants have discharged and continue to discharge industrial stormwater without authorization under a valid RIPDES permit as required by Clean Water Act § 301(a), 33 U.S.C. § 1311(a), and Clean Water Act § 402(p)(2)(B), 33 U.S.C. 1342(p)(2)(b).

106.    Each and every day since at least December 19, 2012, on which Defendants have discharged and continue to discharge industrial stormwater from the Facility without authorization under a valid RIPDES permit constitutes a distinct violation of Clean Water Act § 301(a), 33 U.S.C. § 1311(a), and Clean Water Act § 402, 33 U.S.C. § 1342.

### Second Cause of Action:
### Failure to Obtain a Permit for Industrial Discharges

107.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

108.    Defendants have been required to obtain permit coverage for their industrial stormwater discharges under each of the MSGPs issued by RIDEM, including the 2013 MSGP, or by seeking and obtaining an individual RIPDES permit pursuant to Clean Water Act § 402, 33 U.S.C. § 1342.

109.    Defendants have failed, and continue to fail, to obtain permit coverage under the 2013 MSGP, or any other iteration of the MSGP, or an individual RIPDES permit for their facility.

110.    Each and every day on which Defendants have not had permit coverage for their facility under the Rhode Island Pollutant Discharge Elimination System is a separate and distinct violation of Clean Water Act § 301(a), 33 U.S.C. § 1311(a), and Clean Water Act § 402, 33 U.S.C. § 1342.

### Third Cause of Action:
### Failure to Comply with a Permit for Industrial Stormwater Discharges

111.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

112.   Industrial dischargers are required at a minimum to comply with the requirements of the MSGP, which include but are not limited to:

(a)    developing and implementing a complete and accurate SWMP, which, in the case of the Defendants' Facility, would require a number of stormwater management measures and controls to meet numeric and non-numeric effluent limits;

(b)    submitting a complete NOI to be covered by the MSGP, accompanied by a complete and accurate SWMP;

(c)    implementing required stormwater control measures;

(d)    conducting facility inspections (2013 MSGP Part IV(A));

(e)    collecting stormwater samples from each outfall at the Facility and inspecting the same for indicators of pollution (2013 MSGP Parts IV(A)(1), (A)(3), (B));

(f)    conducting annual comprehensive site inspections and submitting the results thereof to RIDEM (2013 MSGP Parts IV(C) and VII(B));

(g)    complying with the required benchmark monitoring and sampling procedures (2013 MSGP Part VI(B));

(h)    monitoring for all pollutants for which a receiving waterbody is impaired and for which a standard analytical method exits (2013 MSGP Part VI);

(i)    complying with reporting and recordkeeping requirements, including but not limited to reporting of any noncompliance within an applicable time period (2013 MSGP Part VII); and

(j)     satisfying sector-specific requirements such as, in the case of the

Defendants' Facility, requirements pertaining specifically to sand and

gravel facilities (2013 MSGP Part VIII, Subpart J).

113.    Defendants have failed and continue to fail to comply with the requirements of

the 2013 MSGP, including each of the requirements described above.

114.    Defendants have failed to comply with the permit conditions of prior iterations of

the MSGP.

115.    Each and every day on which Defendants have failed to comply with the MSGP is

a separate and distinct violation of Clean Water Act § 301(a), 33 U.S.C. § 1311(a), and

Clean Water Act § 402, 33 U.S.C. § 1342.

## Fourth Cause of Action:
### Failure to Obtain a Permit for Process Wastewater Discharges

116.    Plaintiff incorporates the allegations contained in the above paragraphs as though

fully set forth herein.

117.    Process wastewater discharges cannot be covered under the MSGP; rather, they

require individual RIPDES permit coverage.

118.    Defendants have been required to obtain permit coverage for their Facility by

seeking and obtaining an individual RIPDES permit, pursuant to Clean Water Act § 402,

33 U.S.C. § 1342.

119.    Defendants have failed, and continue to fail, to obtain permit coverage under an

individual RIPDES permit for process wastewater discharges for their Facility.

120.    Each and every day on which Defendants have not had individual RIPDES permit

coverage for process wastewater for their Facility is a separate and distinct violation of

Clean Water Act § 301(a), 33 U.S.C. § 1311(a), and Clean Water Act § 402, 33 U.S.C. § 1342.

## VII. RELIEF REQUESTED

121.   Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a)   Declare Defendants to have violated and to be in violation of § 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for their Facility's unlawful and unauthorized discharges of pollutants to waters of the United States;

(b)   Declare Defendants to have violated and to be in violation of § 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to obtain coverage under the 2013 MSGP for the Facility;

(c)   Declare Defendants to have violated and to be in violation of § 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to comply with all applicable requirements of the MSGP for the Facility;

(d)   Enjoin Defendants from discharging pollutants from the Facility into waters of the United States except as authorized by and in compliance with a RIPDES Permit;

(e)   Order Defendants to comply fully and immediately with all applicable requirements of the 2013 MSGP for the Facility;

(f)   Order Defendants to apply immediately for an individual RIPDES permit for their Facility applicable to process wastewater;

(g)   Order Defendants to pay civil penalties of up to $37,500 per day per day per violation for all CWA violations occurring between January 12, 2009

and November 2, 2015; up to $51,570 per day per violation for all CWA violations occurring after November 2, 2015 and assessed on or after August 1, 2016 but before January 15, 2017; up to $52,414 per day per violation for all CWA violations occurring after November 2, 2015 and assessed on or after January 15, 2017; and up to $53,484 per day per violation for all CWA violations occurring after November 2, 2015 and assessed on or after January 15, 2018, pursuant to §§ 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4

(h)    Order Defendants to take appropriate actions to remedy harm caused by Defendants' noncompliance with the Clean Water Act;

(i)    Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as permitted by § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

(j)    Award any such other and further relief as the Court may deem appropriate.

## VIII. NO PRIOR LAWSUITS

CLF has filed no prior related lawsuits against Defendants seeking redress for these violations under the Clean Water Act.

Dated: March 8, 2019

Respectfully submitted,

CONSERVATION LAW FOUNDATION, INC.

By its attorney,

/s/ James Crowley
James Crowley, RI Bar No. 9405
Conservation Law Foundation
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02918
(401) 228-1905
(401) 351-1130 (fax)
jcrowley@clf.org