UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Conservation Law Foundation, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Material Concrete Corp., Materials Equipment Corp., and Material Realty, LLC,<br><br>Defendants. | Case No. 1:19-cv-00120<br><br>~~**Proposed**~~ **Consent Decree** |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on March 8, 2019, against Material Concrete Corp., Materials Equipment Corp., and Material Realty, LLC, (collectively "Defendants") alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. ("Clean Water Act"), and seeking declaratory and injunctive relief, civil penalties, and attorney fees and costs; and

WHEREAS, CLF is a regional, nonprofit environmental organization; and

WHEREAS, CLF alleged that Defendants own and operate a construction sand and gravel and concrete facility located at 618 Greenville Road, North Smithfield, Rhode Island 02896 (the "Facility"); and

WHEREAS, CLF alleged that the Facility discharged stormwater and process wastewater associated with its industrial activity without a Clean Water Act discharge permit to waters of the United States; and

WHEREAS, CLF alleged in its complaint (the "Complaint") and in a letter (the "Notice Letter") dated December 19, 2017, sent to Defendants, that Defendants violated Sections 301(a) and 402(p)(2)(B) of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p)(2)(B); and

WHEREAS, Defendants have engaged a qualified engineering consultant to undertake the preparations necessary to obtain a stormwater discharge permit for the Facility; and

WHEREAS, Defendants have submitted an application to the Rhode Island Department of Environmental Management ("DEM") for an individual Rhode Island Pollutant Discharge Elimination System ("RIPDES") permit, and agree to receive coverage under said RIPDES Individual Permit; and

WHEREAS, CLF and Defendants agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Defendants of any of the facts, violations, or liability alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendants. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202, and 33 U.S.C. § 1365(a).

2. Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1) because the alleged events giving rise to this action occurred at the facility, located at 618 Greenville Road, North Smithfield, Rhode Island, which is located within this judicial district.

## II. COMPLIANCE PROGRAM

3. Defendants shall comply with the Clean Water Act and shall not cause or allow discharges from the Facility, unless consistent with federal and state statutory and regulatory requirements and permits.

4. Defendants shall obtain and maintain coverage under a DEM RIPDES Individual Permit and shall comply with the applicable RIPDES permit at the Facility.

5. Following the receipt of further information and instructions from DEM, and in coordination with DEM, Defendants shall develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") in accordance with their RIPDES Individual Permit. Defendants shall implement the provisions of their SWPPP at the Facility. In the event that DEM requires that Defendants' SWPPP be amended, Defendants shall comply with the terms of the amended SWPPP.

6. Defendants have retained a qualified engineering consultant to develop their SWPPP. Defendants shall incorporate the consultant's recommendations in their SWPPP.

7. Defendants shall provide a copy of their SWPPP to CLF for its information within fourteen (14) days after it is completed.

8. Defendants shall implement and maintain stormwater control measures, in accordance with the standards required by the applicable RIPDES Permit, to meet numeric and non-numeric effluent limits.

9. Defendants shall implement and maintain stormwater control measures that include site-specific best management practices ("BMPs") as described in the SWPPP, as may be amended from time to time.

10. Wherever feasible, Defendants will design, install, and implement control measures that employ a low-impact development ("LID") approach. LID is a natural resource-based alternative approach to site design that incorporates a variety of structural and non-structural techniques, such as vegetated areas that collect, treat, and infiltrate stormwater and shallow drainage channels that slow runoff and filter it.

## III. MONITORING PROGRAM

11. Defendants shall comply with all applicable inspection, monitoring, and reporting requirements of the applicable RIPDES Permit. This shall include but not be limited to in-house inspection of control structures and storage areas after rain events.

12. Defendants shall monitor and sample their stormwater runoff as required by the RIPES Individual Permit, which includes sheet flow. This stormwater monitoring and sampling must be performed pursuant to the requirements of the RIPDES Permit for those areas regulated by the RIPDES Permit. Once Defendants have obtained coverage under a RIPDES Permit in the future as set forth in Paragraph 4 of this Decree, Defendants shall commence submitting Discharge Monitoring Reports to DEM as required under the applicable RIPDES Permit.

13. During the term of this Decree, Defendants shall send required Discharge Monitoring Reports to CLF. These Reports shall include any required Discharge Monitoring Reports, and an Annual Report, which shall be sent to CLF on a yearly basis. For purposes of compliance with this paragraph, the reporting will not be required by this Decree until the reporting due date corresponding to the monitoring period directly following the monitoring period in which the RIPDES Individual Permit becomes effective.

14. During the first year after the Effective Date of this Decree, Defendants shall implement and/or maintain stormwater control measures at the Facility. If, after the end of twelve months from the Effective Date of this Decree, a monitoring result for any parameter violates a discharge limit (excepting benchmark levels) under the applicable RIPDES Permit, Defendants agree to pay stipulated additional environmental benefits payments as set forth in Paragraph 17 of this Decree. Naturally occurring background levels for any compounds set forth in the RIPDES Individual Permit shall not be included in determining whether a discharge limit exceedance has occurred. Such stipulated additional environmental benefit payments shall be calculated based on the number of monitoring parameters exceeded during a monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (*e.g.*, an exceedance of the Total Suspended Solids monitoring parameter at three separate discharge locations sampled during one monitoring event shall result in one stipulated additional environmental benefit payment, rather than three).

15. During the life of the Decree, Defendants shall copy CLF on all documents related to stormwater quality or Clean Water Act compliance regarding the Facility submitted to DEM. Such documents shall be provided to CLF within fourteen (14) days after the date on which they are sent to DEM.

## IV. ENVIRONMENTAL BENEFIT PAYMENT

16. Defendants shall make two environmental benefit payments to the Woonasquatucket River Watershed Council totaling Forty Thousand Dollars ($40,000) for the environmental protection and restoration of, or other environmental benefit to, the Woonasquatucket River watershed. The first payment shall be made in the amount of Twenty Thousand Dollars ($20,000) within ninety days of the Effective Date of this Decree. The second payment shall be made in the amount of Twenty Thousand Dollars ($20,000) within one hundred and fifty days of the Effective Date of this Decree. Defendants shall notify CLF in writing concurrently when the environmental benefit payments are made and provide copies of the checks.

17. For each missed deadline included in this Decree, excluding payment deadlines discussed in Paragraph 21 below, Defendants shall make an additional environmental benefit payment to the Woonasquatucket River Watershed Council in the amount of Five Hundred Dollars ($500) for the environmental protection and restoration of, or other environmental benefit to, the Woonasquatucket River watershed. CLF shall provide fourteen (14) days to cure each missed deadline before such additional payment shall be due and owing. Payment of each such additional amount shall be due following the cure period if Defendants have not cured the violation. Defendants shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 42, below, Defendants shall not be required to make such additional environmental benefit payment for missed deadlines arising from a Force Majeure event.

18. For each exceedance of a discharge limit in the applicable RIPDES permit as described in Paragraph 14 of the Decree, above, Defendants will make an additional environmental payment to the Woonasquatucket River Watershed Council in the amount of Five Hundred Dollars ($500) for the environmental protection and restoration of, or other environmental benefit to, the Woonasquatucket River watershed. Provided, however, CLF shall provide fourteen (14) days to cure each missed deadline before such additional payment shall be due and owing. Payment of each such additional amount shall be due following the cure period, if Defendants have not cured the violation. Defendants shall not pay more than Four Thousand Dollars ($4,000) per year during the term of this Decree pursuant to the provisions of this paragraph. Defendants shall notify CLF in writing concurrently when the environmental benefit payment is made and provide a copy of the check.

19. None of the environmental benefit payments shall be disbursed to CLF.

## V. STATUTORY ATTORNEY FEES AND COSTS

20. Defendants shall make a one-time payment to CLF in the total amount of Twenty Thousand Dollars ($20,000) as full and complete satisfaction of CLF's claim for attorney fees and costs incurred to date in this matter and for reasonable anticipated costs to be incurred in compliance monitoring and case management over the term of the Decree. This payment shall be made within thirty days of the Effective Date of this Decree.

21. In the event that any payment owed by Defendants under the Decree is not made on or before the due date, Defendants shall be deemed in default of their obligations under this Decree. In addition to a continued requirement to make said payment, Defendants shall pay to CLF attorney fees of Five Hundred Dollars ($500) for every day that a payment is late. Provided, however, CLF shall provide fourteen (14) days to cure each missed deadline before such additional payment shall be due and owing. Payment of each such additional amount shall be due following the cure period, if Defendants have not cured the violation.

## VI. EFFECT OF DECREE

22. CLF covenants not to sue, releases and discharges Defendants (and their subsidiaries, affiliates, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers, successors, assigns and attorneys, including those who have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the past conduct alleged to constitute violations in the CLF letter to Defendants dated December 19, 2017; and (iv) for past violations alleged in any CLF correspondence to Defendants dated prior to the date the Court enters this Decree concerning Defendants' facility and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree against Defendants, including by the filing of a lawsuit.

23. Defendants covenant not to sue, release and discharge CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, successors, assigns and attorneys, including those who have held positions in the past), from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding Defendants, arising from the matters giving rise to this civil action.

24. Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Defendants shall constitute or be construed as an admission or acknowledgment by Defendants of the factual or legal assertions contained in this Decree or in CLF's Complaint, and Defendants retain the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof,

nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Defendants of any liability, or an admission of violation of any law, by Defendants or by their officers, directors, employees, agents, successors, or assigns.

25. CLF does not, by consent to the Decree, warrant or aver in any manner that Defendants' compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with applicable law and regulations governing any activity required by this decree.

## VII. REVIEW AND TERM OF DECREE

26. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

27. Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), or upon DOJ's completion of its review process, whichever is sooner, the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (i) five years have passed from the Effective Date; and (ii) completion of all payment obligations set forth in this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII. MODIFICATIONS AND ENFORCEMENT OF DECREE

28. This Decree may be modified only upon written consent of the Parties and the approval of the Court.

29. This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree. If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and either Party may institute a new action in the United States District Court for the District of Rhode Island concerning their respective rights and obligations under this Decree.

## IX. MISCELLANEOUS PROVISIONS

30. This Decree shall remain in effect if Defendants relocate the Facility to a different location, provided that the new location falls within the jurisdiction of the Clean Water Act. To the extent that relocating the Facility requires Defendants to obtain coverage under a new or

different Clean Water Act discharge permit, they shall be bound by the terms of that permit rather than any permit under which they obtain coverage for discharges at the Facility's current location.

31. Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if Defendants cease to be the owners or operators of the Facility, regardless of whether the Facility continues to operate or not.

32. All payments pursuant to this Decree shall be made in the form of a business check. In the event that any business check submitted is returned due to insufficient funds, late payment penalties may apply and all subsequent payments shall be made in the form of a certified bank check.

33. Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements, and understandings, whether oral or written, among the Parties.

34. Notices. Any notice, demand, copies of documents, and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (e.g., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

35. Notices for Plaintiff shall be sent to:

James Crowley, Esq.
Conservation Law Foundation
235 Promenade Street
Suite 560, Mailbox 28
Providence, RI 02908
(401) 228-1905
jcrowley@clf.org

Notices for Defendants shall be sent to:

Robert A. Pezza
Material Concrete Corp.
618 Greenville Road
North Smithfield, RI 02896

With a copy to:

Eric B. DiMario, Esq.
Kiernan, Plunkett & Redihan LLP
146 Westminster Street
Providence, RI 02903
(401) 831-2900
edimario@kprlaw.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

36. Authorization. Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

37. Successors and Assigns. This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees, and permitted assigns.

38. Interpretation. The provisions contained herein shall not be construed in favor of or against either Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

39. Headings. The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

40. Counterparts. Facsimile, electronic, and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

41. Severability. In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

42. Force Majeure. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendants, including their contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 16, 20, and 21 of this Decree, notwithstanding Defendants' best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendants comply with the

notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include unforeseeably severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendants' financial difficulty in performing such work and acts or omissions attributable to Defendants' contractors or representatives.

If any Force Majeure event occurs which may delay or prevent the performance of any obligation under this Decree, Defendants shall notify CLF, at the address specified in Paragraph 35 above, within five (5) business days after Defendants first know, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendants to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendants the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

**Conservation Law Foundation, Inc.**

By: ______________________ Date: 4/13/2021

Heather Govern, Esq.
Conservation Law Foundation
62 Summer Street
Boston, MA 02110

***The Remainder of this Page Intentionally Blank***

**Material Concrete Corp., Materials Equipment Corp., and Material Realty, LLC**

By: ______________________ Date: 4-9-2021

Robert Pezza, President
Material Concrete Corp., Materials Equipment Corp., and Material Realty, LLC
618 Greenville Road
North Smithfield, RI 02896

Entered and Dated this 30th day of June, 2021.

______________________
William E. Smith
District Judge